### LILLARD et al. v. LONERGAN et al.*
### No. 1027.

Circuit Court of Appeals, Tenth Circuit.
Aug. 14, 1934.

*Writ of certiorari denied 55 S. Ct. 147, 79 L. Ed. – –.

T. M. Lillard, of Topeka, Kan., and W. D. Jochems, of Wichita, Kan. (Roland Boynton, Atty. Gen. of State of Kansas, on the brief), for appellants.

John F. Rhodes, of Kansas City, Mo. (Thomas P. Fenlon, Justin D. Bowersock, and Robert B. Fizzell, all of Kansas City, Mo., on the brief), for appellees Thomas Lonergan and A. Unrein.

Fred Robertson, of Kansas City, Kan. (Edw. M. Boddington and J. O. Emerson, both of Kansas City, Kan., on the brief), for appellees John S. Bird and C. B. White.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge (after stating the facts as above).

■ The state court receivers and the Attorney General filed their written application for possession of the physical property of The Wheat Farming Company in the original cause brought by Thomas Lonergan and A. Unrein against The Wheat Farming Company, entitling the same in said cause. That application and exhibits thereto attached set forth the procedure, orders and final judgment of the state Supreme Court in the quo warranto case before it, instituted in April, 1931, including the appointment of Lillard and Jochems on July 8, 1933, as its receivers and their qualifications to act as such. The record on their appeal was filed here January 25, 1934. Citation signed by the District Judge was duly issued to the parties in the original cause, Lonergan, Unrein and The Wheat Farming Company, and service was accepted by their counsel. At our April term, 1934, Lonergan and Unrein moved to dismiss the appeal on the ground that Bird and White receivers appointed by the Federal Court, were indispensable parties. We denied that motion and sustained a counter motion of appellants that Bird and White be brought in as appellees as proper parties. Thereupon their counsel waived the issuance and service of an alias citation on Bird and White as receivers and entered their appearance in this cause. At final hearing on the merits Lonergan and Unrein petitioned for rehearing of said motion, and it was again argued by their counsel and submitted for further consideration. Bird and White were not parties to the bill in equity in the Federal Court. They were not made parties to appellants' application when they applied to the District Court for an order terminating the proceedings in that court against The Wheat Farming Company and ordering Bird and White to deliver possession to them. They had no interest to be protected as against that application, nor any right to be adjudicated in connection therewith. As equity receivers they merely represented the court in executing its orders and were not legally interested in whether that receivership should continue or be terminated. We therefore conclude that they were not necessary or indispensable parties to this appeal. Their appearance as appellees here might well have been denied. It was at their request and by grace we let them come in. In or out our jurisdiction of the cause would not be affected. It is a matter of procedure of which Lonergan and Unrein have no cause to complain. Had the District Court sustained the application of appellants for possession, Bird and White certainly could not have appealed therefrom. Indiana Southern R. Co. v. Liverpool, L. & G. Ins. Co. (Guion v. Liv., Lon & Globe Ins. Co.), 109 U. S. 173, 3 S. Ct. 108, 27 L. Ed. 895; In re Cockcroft, 104 U. S. 578, 26 L. Ed. 856; Hinckley v. Gilman, etc., R. Co., 94 U. S. 467, 24 L. Ed. 166; Hovey v. McDonald, 109 U. S. 150, 3 S. Ct. 136, 27 L. Ed. 888; Williams v. Morgan, 111 U. S. 684, 4 S. Ct. 638, 28 L. Ed. 559; Payne et al. v. Niles et al., 20 How. 219, 15 L. Ed. 895; Pierce v. Cox, 9 Wall. 786, 19 L. Ed. 786; Youtsey v. Hoffman (C. C.) 108 F. 699. In Egyptian Novaculite Co. v. Stevenson (C. C. A.) 8 F.(2d) 576, 580, it is said:

"Indispensable parties have been defined as 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.'"

■ Again, our September term was pending when the appeal was allowed. When that term closed on January 4, 1934, the January term came on. It was closed on April 5, 1934, and the April term, 1934, came on, and it was at that term that Bird and White entered their appearance as appellees and waived the issuance and service of an alias citation. These facts are analogous to those in Hunn v. Lewis (C. C. A.) 25 F.(2d) 271, in which certiorari was denied. 278 U. S. 631, 49 S. Ct. 30, 73 L. Ed. 549. It was there contended that, as no citation was issued and served during the term of the Circuit Court of Appeals which was pending at the time the appeal was perfected or during the next ensuing term and not until during the following term, the appeal had become inoperative and no citation could then issue. The appellee was a party to the cause. He had entered his appearance on appeal and accepted service, but the citation to him was not issued until the second term of the court of appeals had

870

opened after the appeal was taken. His motion to dismiss the appeal was denied.

Moreover, after Bird and White had entered their appearances and waived issuance and service of the citation to them during our April term, 1934, they later filed in this court in this cause an additional transcript of the record below covering more than 90 printed pages for our consideration. It deals entirely with administrative orders of the District Judge and discloses the actions of Bird and White as receivers in connection therewith and in execution thereof. On the title page of their additional record they are named as appellees with Lonergan, Unrein and The Wheat Farming Company. They filed no motion to dismiss the appeal or to withdraw as parties, but say in their brief they were indispensable parties and therefore join Lonergan and Unrein in their argument on their motion to dismiss. Their attitude is inconsistent. They voluntarily came in as appellees, bring here an additional record for our consideration, argue the merits, and then join other appellees in their contention that the appeal should be dismissed. We adhere to our ruling that the motion of Unrein and Lonergan to dismiss the appeal was not well taken.

Some contention is made that the Supreme Court of Kansas had no authority to appoint receivers in the proceedings in quo warranto. The Constitution of that state (article 3, § 3) gives that court original jurisdiction in proceedings in quo warranto. In Revised Statutes of Kansas, 1923, under chapter 60 on Civil Procedure, article 16, entitled "Quo Warranto," we find this in section 60—1602:

"Such action (quo warranto) may be brought in the supreme court or in the district court in the following cases: * * *

"Fourth, When any corporation does or omits acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or when any corporation abuses its power or exercises powers not conferred by law."

In section 60—1608:

"If judgment be rendered against any corporation, or against any persons claiming to be a corporation, the court may cause the costs to be collected by execution against the persons claiming to be a corporation, or by attachment against the directors or other officers of the corporation, and may restrain any disposition of the effects of the corporation, appoint a receiver of its property and effects, take an account, and make a distribution thereof among the creditors and persons entitled."

Another section of the state statutes, 17—808, provides that on dissolution of any corporation its directors or managers at the time of its dissolution shall be trustees of its creditors and stockholders with power to settle its affairs, unless a receiver is appointed by some court of competent authority. We think there can be no doubt that the Supreme Court of the state had the power claimed to dissolve the corporation and appoint receivers to settle its affairs. Indeed, its action in doing so was in effect a construction of the constitution and statutes of that state relative to the action which it took in this case, binding upon us. We have no reviewing power over the action of that court.

In strictness an information for writ of quo warranto is a proceeding in personam. But the statutes of Kansas (section 60—1601) abolished those forms and provided that remedies theretofore obtainable in that manner should be had by civil action, and the statutes noted supra gave the added powers, if they were not implicit for purposes of executing the court's proper orders and judgment. A corporation can be dissolved and its affairs closed and its franchises seized or withdrawn only by the sovereignty that created it and in the way it provides. The information of the Attorney General in instituting the proceeding in the Supreme Court of Kansas, after setting forth the acts of commission and omission of The Wheat Farming Company which constituted as he alleged forfeiture of its rights and privileges as a corporation, prayed that it be ousted from further acting as such, that it be dissolved and its franchises be seized and for such further relief as should be just and lawful. The primary definition of franchises is that they are a mere right or privilege. They may be so exercised as to become in a sense property itself. Facts attributing to them a large value were alleged in the bill in the Federal Court, which plaintiffs asked that court to protect and preserve. They are commonly assessed ad valorem for purposes of taxation. Adams Express Co. v. Kentucky, 166 U. S. 171, 17 S. Ct. 527, 41 L. Ed. 960; Henderson Bridge Co. v. Kentucky, 166 U. S. 150, 17 S. Ct. 532, 41 L. Ed. 953; and Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 17 S. Ct. 604, 41 L. Ed. 965; Harvester Bldg. Co. v. Hartley, 98 Kan. 732, 160 P. 971. No judgment was sought by the state other than a forfeiture of The Wheat Farming Company's franchises to

be a corporation and to do as a corporation. The intangible things involved were seized at the institution of that procedure, so far as there could be seizure; and the judgment that followed operated ex proprio vigore as condemnation of all corporate rights. The appointment of receivers was a just administrative act for the protection of equitable rights and would have been implied in the absence of statute. We therefore think the information of the Attorney General and the action of the Supreme Court thereon was closely analogous to a proceeding in rem (Pomeroy's Equity Jurisprudence, Orig. Ed., §§ 428, 429, 1317; Ennis v. Smith, 14 How. 400, 429, 14 L. Ed. 472, 1 Greenleaf on Evidence, 15th Ed., § 525), and that the jurisdiction of the state Supreme Court over the corporation, its officers and stockholders, including Lonergan and Unrein, the latter being not only a stockholder but director and vice-president, was exclusive and superior to any other court from the time that proceeding was instituted. Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215; McKinney v. Landon (C. C. A.) 209 F. 300; Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337.

The rule as between courts having concurrent jurisdiction over parties and subject matter, when a controversy arises as to which has the better right to possession, has no application here. The proceeding instituted in the state Supreme Court could not have been maintained in the Federal Court, nor the one in the Federal Court in the state Supreme Court. The one in the Federal Court was antagonistic to the one in the state court. The bill there sought to stay the hand of the state court, to nullify its probable action and thwart the purpose of the proceeding in that court. It specifically prayed that the Federal Court "protect and preserve The Wheat Farming Company's corporate existence, franchises and privileges," and that its business be continued as a going concern; and the order of the Federal Court appointing its receivers directed that they "continue and operate said properties of said defendant as a corporation organized for the purpose of engaging in the business of farming," as a going concern. Those orders were somewhat modified by its subsequent order based on a supplemental bill filed by Lonergan and Unrein in which they called the attention of the District Judge to the order of June 10, 1933, made by the Supreme Court in the case pending before it. In that order the Federal Court took to itself the right and authority to direct its receivers to dispose of The Wheat Farm-

ing Company's property as had theretofore been adjudged by the state Supreme Court, but reserving the right to thereafter "amplify, extend, limit or otherwise modify or change this order, as to the court may seem best."

It has been observed that Lonergan and Unrein in their bill in the Federal Court did not allege that The Wheat Farming Company was insolvent. The latter in its answer alleged that it was not insolvent. No final relief was asked in that bill. The plaintiffs asked the Court to appoint receivers to take charge of, operate and manage the business and all of the properties and assets of the defendant, to operate the defendant's property and conduct its business, "for such period as the court may order." At best the receivership in the Federal Court was only for conservation purposes. Michigan, by Haggerty, v. Michigan Trust Co., 286 U. S. 334, 52 S. Ct. 512, 76 L. Ed. 1136.

The order below of November 14, 1933, herein appealed from is reversed with directions to vacate it, to at once close the Federal Court receivership, direct Bird and White, its receivers, to deliver all property in their hands as such to Lillard and Jochems as receivers appointed by the state Supreme Court. Costs on appeal to be taxed against Lonergan and Unrein personally.