THE NEWELL BRIDGE & RAILWAY CO.

*v.*

RICHARD L. DAILEY,

*State Tax Commissioner*

(No. 14250)

Decided May 20, 1980.
Rehearing Denied July 2, 1980.

*Chauncey H. Browning*, Attorney General, *C. Page Hamrick, III*, Special Assistant Attorney General, for appellant.

*Spilman, Thomas, Battle & Klostermeyer, G. Thomas Battle, Berkman, Ruslander, Pohl, Lieber & Engel, Marcus Aaron, II and Gary L. Goldberg*, for appellee.

HARSHBARGER, JUSTICE:

Our State Tax Commissioner assessed the bridge company $83,051.25 in unpaid Business and Occupation taxes, and the taxpayer, appealing to the Kanawha County Circuit Court, won reversal. The Commissioner appealed to us.

The company's bridge spans the Ohio River between Newell, West Virginia and East Liverpool, Ohio. Two-thirds of the bridge is in West Virginia (we own the river to its low-water mark on the Ohio shore), but the tollbooth is on the Ohio side. All traffic upon the bridge is interstate.

The company is a West Virginia corporation, pays West Virginia property, capital stock and income taxes, and has regularly filed West Virginia Business and Occupation tax returns reporting all tolls collected and claiming them exempt because they were received from interstate traffic.

W. Va. Code, 11-13-2, imposes annual privilege taxes against persons (including corporations) measured by values or gross receipts. The rate for toll bridge companies is four and twenty-nine hundredths percent, per Code, 11-13-2d, which section further provides: "The measure of this tax shall not include gross income derived from commerce between this State and other states of the United States . . . ." This sentence is a reci-

tation of the federal Interstate Commerce Clause, U.S. Const. art. I, § 8: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." Therefore, the federal law is an appropriate guide for our analysis, and cases which interpret the federal clause can be relied upon in our examination of our statute's effect. If revenues from bridges are not covered by the federal constitution's commerce clause, they are not excepted from the statute.

The Commissioner relied on *Henderson Bridge Co. v. Kentucky*, 166 U.S. 150, 41 L.Ed. 953, 17 S.Ct. 532 (1897), wherein a state tax upon the franchise value of a bridge between Kentucky and Indiana was sustained as not violating the federal constitution's commerce clause.

> Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge. The fact that the tax in question was to some extent affected by the amount of the tolls received, and therefore might be supposed to increase the rate of tolls, is too remote and incidental to make it a tax on the business transacted.

Four justices dissented, primarily because they considered:

> [I]t [is] a new and startling doctrine to say that a bridge which is situated in two States, with the sanction of the laws of both, which has been made a post route by act of Congress, is not an instrument of interstate commerce, and that the traffic which goes over such bridge is not such commerce, and that the receipts derived from or charges resulting from such business are not receipts derived from interstate commerce business. Pushed to its legitimate conclusion, this premise deprives the interstate commerce clause of the Constitution of its entire efficacy, and is, I

think, in direct conflict with the Constitution as interpreted by this court from the foundation of the government.

> *Henderson Bridge Co.*
> *v. Kentucky, supra*
> 166 U.S., at 167
> (White, J., dissenting).

They could not reconcile *Covington & Cincinnati Bridge Co. v. Kentucky*, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962 (1894), which prohibited Kentucky from actually fixing toll rates to be charged for use of a bridge between Covington and Cincinnati. However, *Covington* clearly stated that local taxation of *instruments* of interstate commerce, in the absence of federal regulations, was permissible, "provided such tax be not laid upon the commerce itself." 154 U.S. at 212. *See Smith v. State*, 64 Wash.2d 323, 391 P.2d 718 (1964); *Shrader v. Steubenville East Liverpool & Beaver Valley Traction Co.*, 84 W.Va. 1, 99 S.E. 207 (1919); *see also Public Service Commission v. Harpers Ferry & Potomac Bridge Co.*, 114 W.Va. 291, 171 S.E. 760 (1933).

*Detroit International Bridge Co. v. Corporation Tax Appeal Board*, 294 U.S. 83, 79 L.Ed. 777, 55 S.Ct. 332 (1935), was by a unanimous court, and it expressly affirmed *Henderson*. Its thesis was that a corporation does not engage in interstate commerce simply by owning and operating a toll bridge between this country and Canada; therefore, a state privilege tax on the company measured upon paid-up capital and surplus does not violate the Constitution's commerce clause.

This bridge company contends that there has been erosion of the *Henderson* and *Detroit* rule by later cases such as *Pedersen v. D. L. & U. R. R. Co.*, 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125 (1913). Damages were sought for personal injuries suffered by a railway employee who, while carrying bolts to a railroad bridge to be used in repairing it, was struck by his employer's passenger train. He brought his claim under the Federal Employers' Liability Act of 1908, and the court found that he

could maintain his suit because the act covered employees of carriers engaged in interstate commerce, injured while employed in interstate commerce; and one carrying materials to be used in repairing an instrumentality of such commerce is engaged in commerce.

The company also cites *Overstreet v. North Shore Corporation*, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943), to support *Pederson*. In *Overstreet*, the Fair Labor Standards Act's application to workers who operated or maintained a tollroad and drawbridge over a navigable waterway, was affirmed; they were engaged in commerce.

> Reliance is placed upon *Henderson Bridge Co. v. Kentucky*, 166 U.S. 150, and *Detroit Bridge Co. v. Tax Board*, 294 U.S. 83, where in sustaining the power of the States of Kentucky and Michigan, respectively, to tax the franchise of domestic corporations operating bridges between Kentucky and Indiana and between Michigan and Canada, it was said that the respective bridge companies were not engaged in interstate or foreign commerce. We do not regard these objections as well taken.

> . . . .

> The *Henderson* and *Detroit* bridge cases, *supra*, do not affect our conclusion. We have pointed out that decisions such as those, dealing with various assertions of state or federal power in the commerce field, are not particularly helpful in determining the scope of the Act. *Kirshbaum Co. v. Walling, supra,* pp. 520-21; *Walling v. Jacksonville Paper Co., supra.* But even if we accept the premise of the *Bridge* cases and regard respondent as not engaged in commerce, the result is not changed. The nature of the employer's business is not determinative, because as we have repeatedly said, the application of the Act depends upon the character of the employees' activities. *Kirshbaum Co. v. Walling, supra,* p. 524; *Warren-Bradshaw Drilling Co. v. Hall,* 317 U.S.

88, 63 S.Ct. 125, 87 L.Ed. 83; *Walling v. Jacksonville Paper Co., supra.* The fact that respondent may be subject to state taxation does not imply that it is free from federal regulation or that its road and drawbridge are not instrumentalities of interstate commerce. *Overstreet v. North Shore Corporation, supra* 318 U.S. at 131, 132, 63 S.Ct. at 498-499.

We agree that assertions of taxing power by states are not involved in either *Pederson* or *Overstreet.* We might concede that these cases consider railway bridge repair and highway bridge repair and operation to be part of interstate commerce; even that the bridges are "in" interstate commerce, to the extent that passage over them is commerce. *Overstreet* is inapposite because it dealt with the FLSA. *Henderson,* based on state taxation powers, is still good law having never been overruled. The operation of a bridge is not interstate commerce. The revenues derived from operation of the bridge are not revenues derived from "commerce between this State and other states." They are subject to taxation under the Business and Occupation Tax.

So we need not consider the company's contention, adopted by the circuit court, that *Complete Auto Transit v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), controls. The bridge is not, for our purposes, in interstate commerce.

One interesting argument by the company is that a bridge is nothing more than a fixed ferry boat, and so *Gibbons v. Ogden,* 9 Wheat. 1, 218, 6 L.Ed. 23, 75 (1824), and *Gloucester Ferry Co. v. Commonwealth of Pennsylvania,* 114 U.S. 196, 5 S.Ct. 826, 29 L.Ed. 158 (1884), are controlling.

Another comparison was used in *Shrader, supra* 99 S.E. at 212: "One bridges a stream or body of water by a movable surface, the other by a fixed and stationary surface." We disavow that language. A bridge is no more

a ferry boat than is a railroad track a locomotive, or a highway an automobile.

A bridge is a surface over which passes traffic, just as rivers or rails or highways are surfaces. The only similarity that bridges have to ferry boats is that they both facilitate river crossings (except, of course, some bridges span dry land).

*Reversed.*