No. 80–500. NEWELL BRIDGE & RAILWAY CO. *v.* DAILEY, STATE TAX COMMISSIONER OF WEST VIRGINIA. Sup. Ct. App. W. Va. Certiorari denied.

JUSTICE WHITE, with whom JUSTICE BLACKMUN joins, dissenting.

Petitioner is a West Virginia corporation. Its pays West Virginia property, capital stock, and income taxes. Petitioner's sole business is the operation and maintenance of a toll bridge across the Ohio River. The bridge spans the river between Newell, W. Va., and East Liverpool, Ohio. Two-thirds of the bridge is within West Virginia and one-third is within Ohio. The bridge has only one entrance and exit in each State and carries an equal volume of traffic in both directions. There is a single tollbooth, located on the Ohio side.

The West Virginia Business and Occupation Tax, W. Va. Code § 11–13–2 (1974), imposes an annual privilege tax on persons, including corporations, measured by gross receipts. The statute, however, specifically exempts "gross income dedrived from commerce between this State and other states of the United States . . . ." § 11–13–2d. Since 1933, petitioner has regularly reported all tolls collected in its operation of the bridge, but has claimed that this income falls within the exemption for income received from interstate commerce.

In January 1974, respondent assessed the corporation $83,000 in unpaid taxes, representing the tax due on the tolls received between 1968 and 1972. Petitioner appealed

this assessment and won a reversal. That decision, however, was subsequently reversed, and the tax reinstated, by the Supreme Court of Appeals of West Virginia.

That court held that the exemption for gross income derived from commerce between West Virginia and other States is identical in scope to the federal Interstate Commerce Clause: "If revenues from bridges are not covered by the federal constitution's commerce clause, they are not excepted from the statute." — W. Va. —, —, 266 S. E. 2d 453, 454 (1980). To determine the scope of the federal Commerce Clause, the court relied on two prior decisions of this Court: *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150 (1897), and *Detroit International Bridge Co.* v. *Corporation Tax Appeal Board,* 294 U. S. 83 (1935). In *Henderson Bridge,* the Court upheld a Kentucky tax on the intangible property of a Kentucky corporation, the business of which was the operation of a railroad bridge over the Ohio River between the Kentucky and Indiana shores. The West Virginia court relied on the following language from that opinion:

> "Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge." 166 U. S., at 153–154.

In *Detroit International Bridge Co.,* the Court specifically relied on the above language to reach a similar conclusion. 294 U. S., at 86. It upheld a state tax on a state corporation, the sole business of which was to operate and maintain a toll bridge across the Detroit River, from Detroit, Mich., to Ontario, Canada. In both cases, the Court held that the bridge itself was an "instrumentality which others may use in conducting foreign commerce," *id.,* at 85, but that operation of the bridge was not itself interstate commerce.

The West Virginia court correctly noted that *"Hender-*

*son* . . . is still good law having never been overruled." ——
W. Va., at ——, 266 S. E. 2d, at 456. In my view, however,
it is time that this Court took a new look at *Henderson* and
*Detroit International Bridge Co.* to consider whether they are
consistent with this Court's more recent treatment of the
effect of the Interstate Commerce Clause on the power of the
States to impose taxes.

The Court has dealt with other fixed facilities as "instru-
mentalities" of interstate commerce and treated their opera-
tion as interstate commerce. In *Colonial Pipeline Co.* v.
*Traigle,* 421 U. S. 100 (1975), the Court assumed that a cor-
poration that owned and operated an interstate pipeline link-
ing the oil refining complexes of Texas and Louisiana with the
population centers of the Northeast and Southeast was en-
gaged in interstate commerce. See also *Michigan-Wisconsin
Pipe Line Co.* v. *Calvert,* 347 U. S. 157 (1954). It is not at
all clear that a pipeline is distinguishable from a bridge as an
instrumentality of interstate commerce.

Furthermore it is arguable that the Court's conclusion in
*Henderson,* subsequently followed in *Detroit International
Bridge Co.,* that operation of an interstate bridge is not inter-
state commerce was not necessary to support the result reached
there. Kentucky had excluded tangible and intangible prop-
erty located in Indiana from its tax: "The tax in controversy
was nothing more than a tax on the intangible property of the
company in Kentucky." 166 U. S., at 154. Petitioner argues
that the case "involved in reality a *de facto* apportionment to
property within the state." Pet. for Cert. 16. More impor-
tantly, under today's standards it would be unnecessary to
exclude an interstate bridge from the interstate commerce field
to sustain the Kentucky tax involved in the *Henderson* case.
Under *Complete Auto Transit, Inc.* v. *Brady,* 430 U. S. 274
(1977), a state tax on a corporation will be sustained if there
is a substantial nexus between its operations and the taxing
State, and if the tax is fairly apportioned, does not discrim-
inate against interstate commerce, and is fairly related to

the services provided by the State. Under this test, it makes no difference whether operation of an interstate bridge is considered "interstate commerce." Although the Kentucky tax probably would have been upheld under this test, the West Virginia tax involved in the case before us now is an unapportioned tax and would probably not satisfy the test. This creates an incongruous situation: The West Virginia court relied on *Henderson*'s reasoning, which may never have been, and in any case is not now, necessary to support the conclusion it was designed to reach, to support another conclusion that might not otherwise survive under contemporary standards.

Accordingly, I think this case should be given plenary consideration, and therefore I dissent from denial of certiorari.