ARKANSAS & MEMPHIS RAILWAY BRIDGE & TERMINAL COM-
PANY *v.* STATE EX REL. ATTORNEY GENERAL.

Opinion delivered June 13, 1927.

1.  TAXATION—BRIDGE COMPANY DOING BUSINESS IN STATE.—A bridge company incorporated in Tennessee, constructing a bridge across the Mississippi River under authority of the act of Congress of July 20, 1912 (37 Stat. 195), *held* to be doing business within the State, so as to be subject to the franchise tax imposed upon corporations doing business within the State.

2.  CORPORATIONS—BASIS OF FRANCHISE TAX.—The franchise tax on foreign corporations is not based on doing business in the State, but on the right or privilege of doing business in the State.

3.  COMMERCE—LIABILITY OF BRIDGE COMPANY TO FRANCHISE TAX.—A bridge company which constructed a bridge across the Mississippi River, and leased it to interstate commerce carriers, *held* not engaged solely in interstate commerce, or solely in the main-

tenance, ownership, and operation of an instrumentality of such commerce, in a suit by the State to collect the franchise tax.

4. TAXATION—TAX ON FEDERAL FRANCHISE.—A franchise tax upon a company building a bridge across the Mississippi River under authority of the act of Cong. July 20, 1912 (37 Stat. 195), *held* not a tax on a Federal franchise, where the company received its corporate franchise from the State of Tennessee and the Federal authority was secondary and permissive, being granted merely because the stream is navigable.

Appeal from Pulaski Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

*J. W. Canada,* for appellant.

*E. B. Dillon, H. W. Applegate,* Attorney General, and *Robinson, House & Moses,* for appellee.

MEHAFFY, J.   This is a suit by the State of Arkansas against the bridge company to collect a franchise tax from the bridge company.   The bridge company, a corporation organized under the laws of the State of Tennessee, was authorized by act of Congress, approved July 20, 1912, to construct, maintain and operate a bridge and all approaches thereto across the Mississippi River at Memphis, Tennessee, in accordance with the provision of the act entitled "An act to regulate the construction of bridges over navigable waters," approved March 23, 1906.   The act of July 20 was amended by act of Congress of August 23, 1912, but the amendment to the act is not important, we think, in determining whether or not the bridge company is liable for the franchise tax sued for herein.

The complaint alleged that the bridge company, though a foreign corporation, organized under the laws of Tennessee, was doing business for profit in the State of Arkansas, and has a capital stock of $1,260,000 actually engaged in business in Arkansas, and it is also alleged in the complaint that the Arkansas Tax Commission had assessed the defendant with a one-tenth of 1 per cent. tax on that amount of its capital stock operating and doing business in Arkansas, for the privilege of exercising its franchise in the State of Arkansas.

The defendant alleged that it received its franchise from Tennessee and not from Arkansas, and that therefore the State of Arkansas had no right to impose a franchise tax unless it was doing business within the State of Arkansas of such a character that the State could impose and collect a tax for that privilege. It alleged that the sole business in which it was engaged was the maintenance, ownership and operation of an interstate bridge across the Mississippi River, one end and the approaches thereof being located on the Tennessee shore and the other end and the approaches thereto being located on the Arkansas shore, and that said bridge was leased to three interstate carriers, which three owned the entire capital stock of the bridge company and paid, as a rental for the use of the bridge, only such sum as was necessary to take care of maintenance, taxes and other fixed charges, and that therefore the defendant was not engaged in any sort of business in the State of Arkansas. That, if engaged in business, it was engaged exclusively in interstate commerce, or in maintaining an instrumentality of such commerce. That it did not engage in any sort of intrastate commerce in Arkansas. That it constructed the bridge under special license and franchise of the Congress of the United States, and that for Arkansas to impose a franchise tax was a tax upon this Federal franchise, as it had no franchise from the State of Arkansas, and needed none. That the franchise tax imposed by the State of Arkansas was necessarily a tax upon interstate commerce, as the defendant was not in any manner, shape or form engaged in intrastate commerce within the State of Arkansas.

There was no proof taken, but the parties entered into a stipulation which provided, among other things, that, if the bridge company should be held liable for the 1918 tax, the taxes for subsequent years would be controlled by the decree of the court, and therefore, upon an adverse decree being entered against the bridge company, it included taxes for the year 1918 and the taxes for all subsequent years down to the date of the decree, making a total of $17,408.49.

The Pulaski Chancery Court entered a decree on January 21, 1927, holding the bridge company liable for the franchise tax, and gave judgment for the above amount. From this decree the bridge company prayed an appeal, which was granted.

Appellant's first contention is that it is engaged in no sort of business in the State of Arkansas. The stipulation, however, entered into between the parties provides that the bridge company is a corporation chartered, organized and existing under the laws of the State of Tennessee, authorized to do business in the State of Arkansas for the purpose of constructing, owning, controlling and maintaining a railway bridge, approaches and terminals over and across the Mississippi River. The stipulation further provides that, after filing the proper papers and making the proper showing pursuant to the statutes of the State of Arkansas, it was admitted into the State of Arkansas on May 27, 1927, and since that time has been authorized to do business in the State of Arkansas. On that date Thomas S. Buzbee was appointed as agent for service, pursuant to the statutes of Arkansas, and said appointment has not been canceled, and said bridge company paid its franchise tax for the year 1917. It is also stipulated that 66 per cent. of the entire structure is in Arkansas and the track and approaches of the said bridge in Arkansas are 4.39 miles. It still has authority to do business in the State of Arkansas. While the bridge company does not use the bridge itself, but leases it to others, it is leasing it, maintaining it, keeping it and its approaches repaired, and constantly employing labor and capital in the State of Arkansas, and in this way is doing business in Arkansas.

This court has repeatedly held that, in case of a foreign corporation, the tax or license is paid for exercising its corporate powers within the State. The bridge company in this case has the privilege of exercising its corporate powers in this State, and is daily engaged in business in repairing and maintaining the bridge and approaches.

But this court has recently held that the tax is not based upon the doing of business in the State, but the right or privilege of doing business in the State. *State ex rel. Attorney General* v. *Chicago Land & Timber Co.,* 173 Ark. 234, 292 S. W. 98. The above case discusses the constitutional questions and the statutes, and collects many of the authorities which are applicable in this case. It was also stated in the case last referred to:

"It will thus be seen that a foreign corporation is required, 'for the privilege of exercising its franchise in this State,' to pay a franchise tax of one-tenth of 1 per cent. each year upon the proportion of the subscribed, issued and outstanding capital stock of the corporation represented by property owned and used in business transacted in this State.

"It is stated generally that, to render a foreign corporation subject to the jurisdiction of a State, the business done by the company in the State must be of such a character and extent as to warrant the inference that the company has subjected itself to the jurisdiction and laws of the State. There is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable the court to say that the corporation is present in the State. The business which a foreign corporation is conducting in the State, in order to give the courts of the State jurisdiction over it by proper service of process, must be a part of the business for which it was organized. Some courts take the view that it is essential that the foreign corporation transact a substantial part of its ordinary business in the State. Other courts, while recognizing that the transaction of an ordinary portion of the business of the corporation by authorized agents in the State is sufficient to render the corporation subject to the jurisdiction of the courts of the State, hold that it is not necessary that the transactions in the State of the foreign corporation shall be the performance of those particular acts which constitute the characteristic feature of the business for which it was organized, or that the chief

or principal part of the business of the corporation shall
be transacted in the State.   A continuous course of busi-
ness, as distinguished from a single transaction, con-
ducted by authorized agents within the State, constitutes
a doing of business so that the corporation may be fairly
said to be present in the State and amenable to the
process of the courts.''   14A C. J. 1372 *et seq.*

The section of the law above quoted is sustained by
authorities, many of which are cited under the section.
We think there is no question but what the bridge com-
pany is doing business in the State of Arkansas, and not
only that, but the bridge company itself recognized the
fact that it must do business in Arkansas and, for that
reason, complied with the laws of the State of Arkansas
entitling it to do business in this State.

Appellant's next contention is that, if engaged in
business in Arkansas, it is engaged solely in interstate
commerce or solely in the maintenance, ownership and
operation of an instrumentality of such commerce.
According to the stipulation and agreements in this case,
the bridge company is not only not engaged in interstate
commerce, but it is not engaged in any kind of commerce.
It does not operate the bridge and does not carry either
passengers or goods.   In fact, it does nothing in the way
of commerce, either intrastate or interstate.   It owns,
leases, repairs and maintains the bridge across the
Mississippi River, and, while the bridge may be an
instrumentality of interstate commerce so far as the car-
riers are concerned, the bridge company has nothing
whatever to do with carrying either freight or passengers,
and therefore does not use the bridge as an instrumen-
tality for interstate commerce or any other kind of
commerce.

Appellant calls attention to the case of *Norfolk &
Western Ry. Co.* v. *Penn.,* 136 U. S. 115, 10 S. Ct. 958,
34 L. ed. 394, and states that this is a conclusive case.
The difference between that case and this is that the Nor-
folk & Western Railway Company was actually engaged
in interstate commerce itself, and, for that reason, the

court held that the tax on keeping an office in Philadelphia was a tax on interstate commerce. The railway company in that case was engaged in commerce exclusively, was a common carrier, and engaged in interstate commerce, and we think that the case has no application here at all, and the same may be said of other cases cited with reference to interstate commerce.

As we have said, the bridge company merely owns the bridge, leases it and maintains it. If a company owned a boat or a number of boats, and leased them to a carrier or to any person or corporation who used the boat in carrying persons or freight in interstate commerce, the boat would be used in interstate commerce, the carrier would be engaged in interstate commerce, but the owner of the boat would have no connection whatever with interstate commerce. And we therefore think that the bridge company in this case is not engaged in interstate commerce, and it is not engaged in the operation of an instrumentality used in interstate commerce.

Appellant's next contention is that, if the maintenance of a bridge in Arkansas is carrying on business, it is interstate commerce. We think that what we have already said answers this contention and that the authorities cited by appellant in support of this contention have no application. Of course, if the bridge company was a carrier, then whatever was done by the carrier with reference to the bridge, in relation to its business as carrier, would be in interstate commerce, but we have no such case here.

The appellant next contends that the tax is a tax on a Federal franchise. The bridge company received its franchise from the State of Tennessee and not from the Federal Congress, or, if the authority to build the bridge granted by Congress can be called a franchise at all, it is not a primary franchise, but a secondary. The act granting authority to build the bridge expressly states that the bridge company is a Tennessee corporation, and grants the authority to build the bridge to a corporation already created under the laws of the State of

Tennessee. The same requirement would have been necessary for any person who desired to build a bridge across a navigable stream, whether the stream was between two states or wholly within one State. The grant of authority is necessary in all cases where a bridge is built across a navigable stream, and it is just as necessary where there is no interstate commerce passing over the bridge as where it is between two states and all the commerce going over it is interstate. It is merely permission and authority necessary to be granted because the stream is navigable, and the tax here is not in any sense a tax on a Federal franchise and is not a burden on interstate commerce. The bridge company is not engaged in commerce.

The act granting authority provides as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the Arkansas & Memphis Railway Bridge & Terminal Company, a corporation organized under the laws of the State of Tennessee, its successors and assigns, be and are hereby authorized to construct, maintain and operate a bridge and all approaches thereto, across the Mississippi River at Memphis, Tennessee," etc.

The word "authorized" used in the act evidently means clothed with authority, warrant or legal power. It gives a right to the bridge company to act, empowers it to build the bridge, and does not mean that it is required to build it—it is simply permissive.

We take it that no one would contend that, even after the act was passed and the authority granted, there was any obligation on the bridge company to build the bridge. It could build it or not, as it wished, but, if it desired to build a bridge, it would have the authority to do so.

The appellant has not only complied with the laws of Arkansas authorizing it to do business in this State, but it has never withdrawn from the State in the manner provided by law. Whether its failure to do so is because it would thereby subject itself to the penalties for doing

business in the State without complying with the law, or for any other reason, is immaterial. The fact is that it is authorized upon its own application to do business in Arkansas and is continuing to do business under that authority.

The decree of the chancery court is correct, and is therefore affirmed.