*In re* DETROIT INTERNATIONAL BRIDGE CO.

1. LICENSES—ANNUAL PRIVILEGE FEE—COMPUTATION OF FEE.

   Money in hands of Michigan bridge corporation's trustee in another State, to be expended in construction of bridge, was properly included in computation fixing corporation's annual privilege fee, under 2 Comp. Laws 1929, §§ 10140, 10143.

2. SAME.

   Stock owned by Michigan bridge corporation in Canadian subsidiary thereof on deposit with corporation's trustee in another State as collateral to its bonds and debentures is asset, and therefore was properly included in computation fixing its annual privilege fee, under 2 Comp. Laws 1929, §§ 10140, 10143.

3. SAME.

   Unamortized discount and expense items of Michigan bridge corporation, which are mere bookkeeping items and do not represent assets or property, should not be included in computation fixing its annual privilege fee, under 2 Comp. Laws 1929, §§ 10140, 10143.

4. COMMERCE—FOREIGN COMMERCE—ANNUAL PRIVILEGE FEE.

   Annual privilege fee required to be paid by Michigan corporation under 2 Comp. Laws 1929, §§ 10140, 10143, is not tax upon proceeds of business, but is fee for privilege of exercising its franchise and transacting its business within State, and therefore fee required to be paid by bridge corporation is not interference with foreign commerce within meaning of U. S. Constitution, art. 1, § 8, clause 3, although corporation operates international bridge.

Appeal from Corporation Tax Appeal Board. Submitted October 28, 1931. (Docket No. 142, Calendar No. 35,912.) Decided January 4, 1932. Rehearing denied March 3, 1932. Appeal to United States Supreme Court granted April 5, 1932.

Detroit International Bridge Company, a Michigan corporation, appealed from determination of

Secretary of State to Corporation Tax Appeal Board as to amount of annual privilege fees for the years 1929 and 1930. Orders affirmed. Plaintiff appeals. Reversed and remanded conditionally.

*Stevenson, Butzel, Eaman & Long* (*Victor W. Klein,* of counsel), for plaintiff.

*Paul W. Voorhies,* Attorney General, and *Paul G. Eger,* Assistant Attorney General (*Alice E. Alexander,* of counsel), for defendant.

SHARPE, J.    This case involves appeals by the Detroit International Bridge Company, a Michigan corporation, with its principal office in the city of Detroit, from the determination of the corporation tax appeal board fixing its annual privilege fees for the years 1929 and 1930.

The purposes for which the bridge company was organized are:

"To construct, own and/or operate a highway bridge across the Detroit river from Detroit, Michigan, to Sandwich, Province of Ontario, Canada, and the approaches thereto;

"To maintain and operate such bridge and the approaches thereto for the use of vehicular and pedestrian traffic, and to charge and collect tolls for such use."

The bridge is used for vehicular and pedestrian traffic across the Detroit river from Detroit to Canada. Permission and authority for its construction were granted to the bridge company by act of congress and to the Canadian Transit Company, which is now a subsidiary of the bridge company, by an act of parliament of the Dominion of Canada.

The applicable sections of Act No. 85, Pub. Acts 1921, as amended by Act No. 175, Pub. Acts 1929 (2 Comp. Laws 1929, §§ 10140, 10143), requiring the payment of an annual privilege fee by corporations, appear in the margin.[1]

---

1 2 Comp. Laws 1929.

"10140 Annual privilege fee; profit corporation. SEC. 4. Every corporation organized or doing business under the laws of this State, excepting railroad companies and interurban railroad companies, and telephone and telegraph companies, express companies and foreign insurance companies shall, at the time of filing its annual report with the secretary of State of this State, as required by section five of chapter two of part five of act number eighty-four of the public acts of nineteen hundred twenty-one, for the privilege of exercising its franchise and of transacting its business within this State, pay to the secretary of State an annual fee of two and one-half mills upon each dollar of its paid-up capital and surplus, but such privilege fee shall in no case be less than ten dollars nor more than fifty thousand dollars. It is the intent of this section to impose the tax herein provided for upon every corporation, foreign or domestic, having the privilege of exercising corporate franchises within this State, irrespective of whether any such corporation chooses to actually exercise such privilege during any taxable period."

"10143 Franchise and privilege fees; method of computation; surplus defined; furnishing of information. SEC. 5. In the case of computing the franchise and privilege fees prescribed by sections three and four of this act, respectively, both as to domestic and foreign corporations, such computation shall be made upon the corporation's property, both tangible and intangible, owned or used in Michigan in the ratio that such property bears to the entire property of the corporation, and such ratio shall be applied by the secretary of State to determine the amount of the authorized capital stock owned or used in Michigan, and to determine what portion of the corporation's paid-up capital and surplus, severally, are owned or used in Michigan. The term 'surplus' as used in this act, shall be taken and deemed to mean the net value of the corporation's property, less its outstanding indebtedness and paid-up capital; but in no case, either as domestic or as to foreign corporations, shall any deduction be made from the item of paid-up capital, in computing the privilege fee thereon, by reason of any impairment of the same. None of the property or capital of any corporation subject to paying the privilege fee prescribed in section four which is located without the State of Michigan, and none of the capital or surplus of such corporation represented by property exclusively used in interstate commerce, shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made: *Provided,* That in determining the amount or value of intangible property, including capital investments, owned or used in this State by either a domestic or foreign corporation, such prop-

1. In 1929 the bridge company reported under the heading, "Cash, Including Cash on Special Deposit, in Michigan, $1,069.65; without Michigan, $5,673,155.71," and in its 1930 report, under a similar heading, cash "In Michigan, $6,271.64," and "Without Michigan, $44,124.15." In the latter report also appeared an item, "Special Deposits, $1,768,920.81."

It is the claim of the company that the amount of the items "Special Deposits" had become localized and had acquired a business situs in the State of New York. The appeal board held otherwise. Included in the item $5,673,155.71 was $52,041.60, money of the company on deposit in a New York bank. It is conceded that this sum should be included in the computation. It appears from the affidavit of the president of the company, annexed to the 1929 report, that the balance of this item was held by the New York Trust Company as trustee under a joint first mortgage of the bridge company and the Canadian Transit Company, securing bonds of these companies in the sum of $12,000,000, and also as trustee under a trust agreement of the bridge company, securing debentures of that company in the amount of $8,000,000; that these bonds and debentures were issued to bankers for cash in August,

erty shall be considered to be located, owned or used in this State for the purposes hereof, if used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation. The secretary of State shall in all such cases be authorized to require the corporation to furnish detailed and exact information touching such several matters before making a final determination of the privilege fee to be paid by such corporation. For the purpose of this act only, each share of no par value shall be deemed to have the value of at least one dollar, or such value as shall have been fixed by the corporation for the sale of such stock, or the book value as determined by the secretary of State, whichever may be the higher. In any case where the capital of a corporation is not divided into shares, the whole property thereof shall be deemed to be the authorized capital stock for the purpose of this act."

1927; that the proceeds thereof came into the hands of the trustee and the sum then in its hands was the balance thereof after such payments as had been made by it on the construction cost of the bridge; that a part of it had been loaned on call to individuals and corporations located and doing business in New York, and that the trustee was authorized so to do by the provisions in the mortgage and trust agreement; that the bridge company was entitled to it only as needed to pay the cost of construction of the bridge, and that a substantial part of it was to be used during the period of construction in payment of interest due upon the mortgage bonds and debentures.

The item of ''Special Deposits'' in the 1930 report is explained in a similar manner, the amount in the hands of the trustee having been reduced to that amount.

The fee here sought to be collected is imposed upon the ''paid-up capital and surplus'' of the corporation ''for the privilege of exercising its franchise and of transacting its business within this State,'' and the computation thereof in the ratio prescribed ''shall be made upon the corporation's property, both tangible and intangible, owned or used in Michigan,'' and as provided in the amendment (Act No. 175, Pub. Acts 1929 [2 Comp. Laws 1929, § 10143]):

''In determining the amount or value of intangible property, including capital investments, owned or used in this State by either a domestic or foreign corporation, such property shall be considered to be located, owned or used in this State for the purposes hereof, if used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation.''

It seems clear that the money in the hands of the trustee in New York is the property of the corporation, and was properly included in the computation.

The contention of counsel for the bridge company that this money "had become localized and had acquired a business situs in the State of New York," if a subject for consideration in the construction to be placed upon our statute, is answered by the holding of the court in that State that the "activities" of the trustee in a similar case "are merely incidental to the corporate organization and the ownership of corporate assets and are not exercised for the purpose of continued efforts in the pursuit of profit and gain, which is the test of the 'doing of business.'" *People, ex rel. Manila E. R. & L. Corp.,* v. *Knapp,* 229 N. Y. 502 (128 N. E. 892) (syllabus).

The bonds and debentures were issued by the bridge company to secure the money with which to erect the bridge. These instruments do not appear in the record, although counsel on both sides quote from them. It will be assumed that under their provisions it was, and is, the duty of the trustee to protect the purchasers by seeing to it that the money is expended for the purpose for which the securities were issued. But, until so expended, it belongs to the bridge company, although not subject to withdrawal from the hands of the trustee until the conditions of the trust agreement have been complied with. The purpose of its retention by the trustee was not for reinvestment. Neither could it be appropriated or set aside by the trustee for the payment of interest on the bonds or securities until such interest became due.

2. Under the heading "Investments," the 1929 report showed $1,304,630.70, and that for 1930 $2,471,610.63. These items included stock in the

Canadian Transit Company of the value of $1,280,000. Over objection these sums were included in the computation by the appeal board. This company was organized under the laws of the Dominion of Canada. While the title to that part of the bridge situated in Canada is held by it, all of the shares of its stock are held and owned by the Detroit International Bridge Company. It is but a subsidiary thereof. Its affairs must be conducted as a separate entity, in order that the governmental rights of that country may be protected. Its stock is on deposit by the bridge company with the trustee in New York as collateral to the bonds and debentures issued. This stock is an asset in the hands of the bridge company, and was properly included in the computation.

3. Items "Unamortized Discount and Expense on Funded Debt" of $1,234,217.19 in the 1929 report and $1,153,458.98 in that of 1930 were included in the computations by the appeal board. These items are thus explained by the president in his affidavit above referred to: When the bonds and debentures of the bridge company were sold in 1927, the face value of them was not received by the company. They were sold at a discount, and there were certain expenses connected with the sale. This discount and expense are represented by these items, and are treated upon its balance sheet as an asset to be reduced each year until the securities mature. He states:

"The theory upon which accountants proceed in sanctioning this practice is that since the item is a payment for the use of money over a long period it is fair that the burden of the payment should be spread over the entire period and not charged entirely to the year in which it was made."

These are but bookkeeping items. They do not in fact represent an asset or property of the company. Without passing upon the propriety of making such entries on its balance sheets and inserting them in its reports to the secretary of State, we are satisfied that they should not have been included in the computation of the tax.

4. It is insisted that the bridge company is not subject to the payment of any annual privilege tax; that it is limited by its charter and dedication to public use, and is engaged exclusively in foreign commerce, and that the imposition of such a tax upon it violates article 1, § 8, clause 3, of the Federal Constitution, which empowers the congress of the United States ''to regulate commerce with foreign nations.''

We are impressed that in the discussion of this matter counsel lose sight of the nature of the privilege fee sought to be collected. It is not a tax upon the proceeds of the business of the corporation. It in no way involves the tolls collected from those using the bridge as a means of transportation between Detroit and Canada. It is a fee imposed by law ''for the privilege of exercising its franchise and of transacting its business within this State.'' The distinction between such a fee and a tax upon property was clearly pointed out in *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich. 261, and later in *Re Truscon Steel Co.,* 246 Mich. 174, and in *Re G. H. Hammond Co.,* 246 Mich. 179. The question presented is so clearly disposed of in *Re Detroit & Windsor Ferry Co.,* 232 Mich. 574, that further discussion seems unnecessary.

The cases relied on by counsel for the bridge company are, we think, easily distinguished. In *Philadelphia & Southern Steamship Co.* v. *Pennsylvania,*

122 U. S. 326 (7 Sup. Ct. 1118), the tax was levied upon the gross receipts of a steamship company; in *Covington, etc., Bridge Co.* v. *Kentucky*, 154 U. S. 204 (14 Sup. Ct. 1087), the State sought to regulate the rates of fare for passage over a bridge spanning the Ohio river; in *City of Sault Ste. Marie* v. *Int'l Transit Co.*, 234 U. S. 333 (34 Sup. Ct. 826, 52 L. R. A. [N. S.] 574), the city sought to enforce the collection of a license fee, and in *Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 555 (45 Sup. Ct. 184), and in *State Tax Commission* v. *Interstate Natural Gas Co., Inc.* (U. S.), 52 Sup. Ct. 62, the State sought to enforce a statute providing for the collection of such a tax on corporations not organized under its laws and exclusively engaged in interstate commerce.

Unless counsel can agree upon the deductions which shall be made in conformity herewith, the orders will be set aside and remand had to the board to determine the proper amount of the tax to be paid.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.