DETROIT INTERNATIONAL BRIDGE CO. *v.* CORPORATION TAX APPEAL BOARD.

1. CORPORATIONS—ANNUAL PRIVILEGE FEE.
     Annual corporation privilege fee imposed by 2 Comp. Laws 1929, §§ 10140, 10143, is payable for the privilege of exercising corporate franchise whether it is exercised or not.

2. SAME—FOREIGN COMMERCE.

> Annual corporation privilege fee imposed by 2 Comp. Laws 1929, §§ 10140, 10143, upon domestic corporations is not a direct burden on foreign commerce where corporation owns, operates, and maintains an international bridge for use of vehicular and pedestrian traffic for tolls but over which it does not itself carry persons or goods (U. S. Const. art. 1, § 8, cl. 3).

3. COMMERCE—FOREIGN—INTERSTATE—CORPORATION PRIVILEGE FEE.

> Foreign commerce is included in term "interstate commerce" as used in 2 Comp. Laws 1929, § 10143, excluding corporate property used exclusively therein from computation of annual corporation privilege fee.

Appeal from Corporation Tax Appeal Board. Submitted April 17, 1934. (Docket No. 134, Calendar No. 37,654.) Decided June 4, 1934. Affirmed on appeal to Supreme Court of the United States January 14, 1935.

Detroit International Bridge Company, a Michigan corporation, appealed from determination of Secretary of State to Corporation Tax Appeal Board as to amount of annual privilege fee for the year of 1933. Order affirmed. Plaintiff appeals. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Victor W. Klein,* of counsel), for plaintiff.

*Patrick H. O'Brien,* Attorney General (*Alice E. Alexander,* of counsel), for defendant.

FEAD, J. Plaintiff, a Michigan corporation, appeals from assessment for 1933 of the fee imposed under 2 Comp. Laws 1929, §§ 10140, 10143, on every corporation organized or doing business under the laws of the State—"for the privilege of exercising its franchise and of transacting its business within this State." The fee is payable for the privilege of exer-

cising the corporate franchise whether it is exercised or not. In computing the fee, "none of the capital or surplus of such corporation represented by property exclusively used in interstate commerce" enters into the computation.

In a former case, involving the fees for 1929 and 1930, plaintiff was held liable. *In re Detroit International Bridge Co.,* 257 Mich. 52, affirmed in *Detroit International Bridge Co.* v. *Corporation Tax Appeal Board,* 287 U. S. 295 (53 Sup. Ct. 137). The supreme court of the United States refused to pass upon the contention that the fee violated the commerce clause of the Federal Constitution (article 1, § 8, cl. 3) because plaintiff had not established that it had no power to carry on any business not within the protection of the commerce clause.

Thereupon, in 1933, plaintiff amended its charter to read:

"Article 3.

"The purpose or purposes of this corporation are as follows:

"To operate the highway bridge, known as the Ambassador Bridge, across the Detroit River from Detroit, Michigan, to Sandwich, Province of Ontario, Canada, and the approaches and appurtenances thereto, and to own all or part of said bridge, and approaches and appurtenances thereto.

"To maintain and operate said bridge and approaches and appurtenances thereto for the use of vehicular and pedestrian traffic, and to charge and collect tolls for such use."

Plaintiff now claims that, under its charter, it can do no intrastate business, its only corporate power is to operate the bridge, such operation is foreign commerce and, therefore, the privilege fee is a burden upon such commerce and contravenes the Federal Constitution.

We need not inquire whether plaintiff has any intrastate power under statutes regulating domestic corporations. Nor whether maintenance of the bridge is local business. Nor need the multitude of cases dealing with taxation and regulation of interstate and foreign commerce be analyzed or distinguished. In plaintiff's former case and *In re Detroit & Windsor Ferry Co.*, 232 Mich. 574, where this court held that the fee is not a direct burden on foreign commerce, the fact that the corporations had local powers was not given weight. These cases are determinative upon plaintiff's liability for the fee.

However, in determining the amount of the fee, the question whether the operation of the bridge is foreign commerce is presented because of the statutory exclusion from the computation of property used exclusively in interstate commerce. In this connection, "interstate commerce" includes foreign commerce. *In re Detroit & Windsor Ferry Co.*, *supra.*

There can be no doubt that the bridge, if operated by a carrier, would be an instrumentality of foreign commerce. But the question under the statute is whether it is used in such commerce by plaintiff.

Plaintiff conveys no persons or goods across the bridge or international boundary line. It merely collects tolls from such pedestrians or vehicles as use it. It provides an instrumentality which others may use in conducting foreign business.

Plaintiff cites *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204, 219 (14 Sup. Ct. 1087), as controlling. There, a State law fixing tolls on an interstate bridge was held invalid as a regulation of interstate commerce. The court said, italics ours:

"With reference to the second question, an attempt is made to distinguish a bridge from a ferry boat, and to argue that while the latter is an instrument of interstate commerce, the former is not. Both are, however, vehicles of such commerce, and the fact that one is movable and the other is a fixture makes no difference in the application of the rule. Commerce was defined in *Gibbons* v. *Ogden,* 9 Wheat. (22 U. S.) 1, 189, to be 'intercourse,' *and the thousands of people who daily pass and repass over this bridge may be as truly said to be engaged in commerce as if they were shipping cargoes of merchandise from New York to Liverpool.* While the bridge company is not itself a common carrier, it affords a highway for such carriage, and a toll upon such bridge is as much a tax upon commerce as a toll upon a turnpike is a tax upon the traffic of such turnpike, or the charges upon a ferry a tax upon the commerce across a river. *A tax laid upon those who do the business of common carriers* upon a certain bridge is as much a tax upon the commerce of that bridge as if the owner of the bridge were himself a common carrier."

It will be noted that the tolls constituted a direct burden upon the people who used the bridge in interstate commerce.

Defendant relies on *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150 (17 Sup. Ct. 532). This case has particular significance because of a vigorous dissenting opinion by four justices. In both opinions the *Covington Bridge Case* was cited. The State imposed a tax upon the value of the franchise of a domestic corporation operating a railroad bridge. The minority held it was a franchise tax upon all the business of the bridge company and that its business was interstate commerce. They said:

"The contention that although the traffic over the bridge may be interstate commerce and the receipts from said traffic be interstate commerce receipts, yet the tolls paid to the bridge company are not receipts from interstate commerce business transacted by the bridge company, is a mere distinction without a difference. What, may I again ask, is the toll paid to the company for the use of the bridge but the result of a contract entered into for the purpose of carrying on interstate commerce? In the *Covington Bridge Case* the sole question was as to the right of the State of Kentucky to regulate the amount of tolls to be received by the bridge company. The right of the State was denied on the ground that the tolls were a matter of interstate commerce, that is, that the business of operating the bridge and charging for the use thereof was interstate commerce and not subject to State control. In that case then, the tolls were adjudged to be receipts from interstate commerce; in the case at bar, they are declared not so to be. The far-reaching consequence of this asserted distinction is well calculated to arouse solicitude for the future."

The majority of the court held the tax was upon the franchise as intangible property and was not a burden upon interstate commerce because the bridge company was not engaged in interstate commerce. The reasons given for the ruling are not *dicta,* as suggested by plaintiff, although the ruling could have been sustained on other grounds. The court said:

"Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge.

The fact that the tax in question was to some extent affected by the amount of the tolls received, and therefore might be supposed to increase the rate of tolls, is too remote and incidental to make it a tax on the business transacted.''

In *Arkansas & Memphis R. B. & T. Co.* v. *State, ex rel. Attorney General,* 174 Ark. 420 (295 S. W. 378), certiorari denied 275 U. S. 548 (48 Sup. Ct. 85), the tax was imposed on a foreign corporation, authorized to do business in Arkansas, for the ''right or privilege of doing business in the State.'' Its sole business was to maintain, own and operate an interstate bridge. It leased the bridge to three interstate carriers which owned all the capital stock of the bridge company and paid as rental for the use of the bridge only such sum as was necessary to take care of maintenance, taxes and other fixed charges. The court held the bridge company, by leasing, maintaining and keeping the bridge and its approaches repaired and employing labor and capital in the State, was doing business in the State, that maintenance of the bridge was not interstate commerce, and said:

''Appellant's next contention is that, if engaged in business in Arkansas, it is engaged solely in interstate commerce or solely in the maintenance, ownership and operation of an instrumentality of such commerce. According to the stipulation and agreements in this case, the bridge company is not only not engaged in interstate commerce, but it is not engaged in any kind of commerce. It does not operate the bridge and does not carry either passengers or goods. In fact, it does nothing in the way of commerce, either intrastate or interstate. It owns, leases, repairs and maintains the bridge across the Mississippi River, and, while the bridge may be an instrumentality of interstate commerce so

far as the carriers are concerned, the bridge company has nothing whatever to do with carrying either freight or passengers, and therefore does not use the bridge as an instrumentality for interstate commerce or any other kind of commerce.''

In that case, as usual, the court reasoned from the facts before it. It did not intimate that if the bridge company had operated the bridge the result would have been different.

In our opinion, the fact that plaintiff carries no persons or goods across the international line is determinative that it is not engaged in foreign commerce and its property is not so used by it. We so read the authorities above cited.

Affirmed.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.