**In re VICKSBURG BRIDGE & TER-MINAL CO.**

**Nos. 1236, 1237.**

District Court, S. D. Mississippi, W. D.

July 5, 1938.

Lotterhos & Travis, of Jackson, Miss., for J. B. Gully.

Watkins & Eager, of Jackson, Miss., and Sholars & Gunby, of Monroe, La., for trustees.

DAWKINS, District Judge.

Petitioner, J. B. Gully, Tax Collector for the State of Mississippi, has filed four petitions against the estate of this debtor, to collect for privilege taxes alleged to be due the State and City of Vicksburg, as follows:

Against the Corporation for the Period Prior to Rcrship.

| State Taxes: | Taxes | Damages. | Total |
|---|---|---|---|
| Apr. 28, 1931 to Apr. 28, 1932 | $500.00 | $500.00 | $1000.00 |
| Apr. 28, 1932 to .Apr. 28, 1933 | $500.00 | $500.00 | $1000.00 |
| Apr. 28, 1933 to Apr. 28, 1934 | $500.00 | $500.00 | $1000.00 |
| | | | $3000.00 |
| Against the Receivers: | | | |
| Jan. 30, 1934 to Apr. 28, 1934 | $500.00 | $500.00 | $1000.00 |
| Against the Receivers and Trustees, Jointly: | | | |
| Apr. 28, 1934 to Apr. 28, 1935 | $500.00 | $250.00 | $ 750.00 |
| Against the Trustees Alone: | | | |
| Apr. 28, 1935 to Apr. 28, 1936 | $500.00 | $250.00 | $ 750.00 |
| Apr. 28, 1936 to Apr. 28, 1937 | $500.00 | $250.00 | $ 750.00 |
| Apr. 28, 1937 to Apr. 28, 1938 | $500.00 | $250.00 | $ 750.00 |
| Total State taxes claimed | | | $7000.00 |

For the City of Vicksburg:
Against the Corporation:

| | Taxes | Damages | Total |
|---|---|---|---|
| Apr. 28, 1931 to Apr. 28, 1932 | $250.00 | $250.00 | $ 500.00 |
| Apr. 28, 1932 to Apr. 28, 1933 | $250.00 | $250.00 | $ 500.00 |
| Apr. 28, 1933 to Jany. 30, 1934 | $250.00 | $250.00 | $ 500.00 |
| | | | $1500.00 |

Against the Receivers and Trustees:

| | Taxes | Damages | Total |
|---|---|---|---|
| Jan. 30, 1934 to Apr. 28, 1934 | $250.00 | $250.00 | $ 500.00 |

Against Receivers and Trustees Jointly:

| | Taxes | Damages | Total |
|---|---|---|---|
| Apr. 28, 1934 to Apr. 28, 1935 | $250.00 | $250.00 | $ 500.00 |

Against Trustees Alone:

| | Taxes | Damages | Total |
|---|---|---|---|
| Apr. 28, 1935 to Apr. 28, 1936 | $250.00 | $250.00 | $ 500.00 |
| Apr. 28, 1936 to Apr. 28, 1937 | $250.00 | $250.00 | $ 500.00 |
| Apr. 28, 1937 to Apr. 28, 1938 | $250.00 | $250.00 | $ 500.00 |
| | | | $4000.00 |

The trustees denied liability in toto. All four demands have, by agreement, been consolidated for determination. The facts have been stipulated as follows:

"For the purpose of a hearing and adjudication of the four claims by J. B. Gully, State Tax Collector of the State of Mississippi, which said claims, made by four separate petitions, are respectively for privilege taxes claimed to be due by the debtor to the City of Vicksburg, for taxes claimed to be due by the debtor to the State of Mississippi, for taxes claimed to be due by the Receivers and Trustees to the City of Vicksburg, and for taxes claimed to be due by the Receivers and Trustees to the State of Mississippi, it is stipulated and agreed between J. B. Gully, State Tax Collector, and said Trustees that the following facts are true:

"(1). J. B. Gully, the petitioner, is the duly elected, qualified and acting State Tax Collector of the State of Mississippi, and as such charged with the duty and vested with the power of suing in his own name for the use and benefit of the State of Mississippi, and for the use and benefit of the City of Vicksburg, Mississippi, for the collection of any and all taxes due to said state and said city respectively which have not been paid.

"(2). Vicksburg Bridge & Terminal Company, a corporation, the debtor, was the owner and operator of a toll bridge between Vicksburg, Mississippi and Delta Point, Louisiana, from on or about the 28th day of April, 1930, when said bridge was opened for traffic and use, to on or about January 30, 1934, when said corporation was placed in the hands of Receivers under the jurisdiction of this court.

"(3). The east end of said toll bridge is situated in the City of Vicksburg, Warren County, Mississippi, on the east bank of the Mississippi River; the west end of the bridge is situated on the west bank of the Mississippi River in Madison Parish, Louisiana. The bridge proper is 2930 feet in length. There is an approach to the bridge of 600 feet on the east side, and an approach of 5100 feet on the west side. The bridge is 36 feet wide. The north half is used solely for the passage of pedestrians and vehicles carrying passengers or freight across the bridge, for which the bridge company collects tolls from persons using said bridge. The south half is leased to the Yazoo & Mississippi Valley Railroad Company, over which it operates its trains and cars, and for which it pays to the bridge company a contractual compensation.

"The Bridge Company and the Trustees cause the bridge to be patroled daily. Lights are constructed in the center of the bridge in aid of navigation, which lights are in the State of Louisiana. Signs are maintained in Mississippi, Louisiana and Arkansas, directing traffic to the bridge. A certified copy of the charter of the company has been filed with the authorities of the States of Mississippi and Louisiana, and the Company is qualified to do business in these states, and an agent for service of process in each of said States has been appointed. A copy of the charter of the Company is hereto attached. The toll house at which all tolls are collected is located in Vicksburg Mississippi, at the east end of the bridge.

"(4). Said toll bridge was, and is, located partly within the State of Mississippi and partly within said City of Vicksburg, Mississippi, and from there operated.

"(5). In the operation of said toll bridge, said corporation did not transport persons or property from one state to another, but maintained and operated said bridge and collected tolls from persons using said bridge, and provided an instrumentality which others might, and did, use in interstate commerce upon payment of the established toll to said corporation. That said bridge company has at all times maintained said bridge painted and in repair; that a copy of the contract it has with the Yazoo & Mississippi Valley Railroad Company is hereto attached and marked Exhibit 'A'.

"(6). Said J. B. Gully, Tax Collector, had no knowledge of certain orders and decrees made by this Court requiring the

filing of claims against the debtor corporation on or before August 7, 1937, until a few days before his petitions were filed, and after his attorneys had begun preparation of said petitions, but notice of said date for filing claims had been duly published as required by this Court in said orders and decrees.

"Neither said corporation nor the Receivers or the Trustees thereof, nor any other person, has been injured or damaged by the delay of J. B. Gully, State Tax Collector, in filing his petition.

"(7). Said Vicksburg Bridge & Terminal Company was placed in the hands of receivers by the District Court of the United States for the Western Division of the Southern District of Mississippi on or about the ———— day of January, 1934. Said bridge company was adjudged a voluntary bankrupt under Section 71(b) [77(b)] of the Acts of Congress of the United States, and Harry E. Bovay and Kenyon Wells have operated such bridge as receivers, and as trustees under said Act, since said date, in the same manner that it was operated by the debtor corporation, under decrees of this court. That reference to the decrees appointing said Receivers and Trustees be and is hereby made as if set out herein in full in words and figures. That said Trustees are still operating the said bridge in the same manner that it was operated by the debtor corporation under the decrees of this Court. That said bridge across the Mississippi River from the State of Mississippi into the State of Louisiana, is operated and maintained by said Trustees; that the general office, however, is in the City of Vicksburg, Warren County, Mississippi, where all tolls for the operation of the bridge are collected.

"(8). That the Vicksburg Bridge & Terminal Company is a Delaware corporation, domiciled at Wilmington in said State, organized the 20th day of December, 1927; that it began the construction of said bridge upon the 6th day of March, 1928, and that said bridge was thrown open to the public upon the 28th day of April, 1930; that the said Vicksburg Bridge & Terminal Company claims and asserts the exemptions from all privilege taxes provided by Chapter 86, Mississippi Laws of 1928; in order to enable the court to determine its claims for exemption from privilege taxes, a copy of the records and ordinances of the City of Vicksburg are hereto attached. Such ordinances as the City of Vicksburg may have passed, if any, are likewise hereto attached. During the operation of the bridge, the United States Government has asserted and obtained the right of free transportation over the bridge for its troops and munitions of war.

"(9). That neither said debtor corporation nor said Receivers or Trustees, nor any other persons for their use and benefit, or the use and benefit of any of them, have paid the privilege tax demanded herein, except that at the time the bridge was placed in operation, the tax for the current year was paid under protest to the Sheriff and Tax Collector of Warren County, Mississippi, and refunded to the bridge company under an opinion of the Attorney General of the State of Mississippi.

"Signed this the 11th day of February, 1938."

I find the facts as stipulated.

### Opinion.

The pertinent portions of the State law under which the claims are made are as follows, Chapter 88, Mississippi Laws of 1930:

"Sec. 3. Privilege Taxes Imposed.— Every person desiring to engage in any business, or exercise any privilege hereinafter specified, shall first, before commencing same, apply for, pay for, and procure from the proper officer a privilege license authorizing him to engage in the business, or exercise the privilege specified therein; and the amount of tax shown in the following schedules is hereby imposed for the privilege of engaging and/or continuing in the businesses set out therein.
* * * * * * * * * * * * * *

Sec. 78. Ferries.—Upon each person operating a toll bridge or ferry (other than those driven by mechanical power), as follows:
* * * * * * * * * * * * * *

"Upon each person operating a toll bridge between this state and another state ......$500.00."

In Section 225 of this Act, it is provided that anyone failing to pay the taxes and to take out a license before beginning business, shall pay 100% damages, and in addition, be subject to a penalty on conviction of not more than $500 fine or imprisonment for six months, or both. The same law was re-enacted in 1932, 1934 and

1935, Laws Miss.1932, c. 89; Laws Miss. 1934, c. 118; Laws Miss.1935, Ex.Sess., c. 20, except that in the Act of 1934, the damages were reduced to 50% and which was continued thereafter.

The Act of 1930 authorized municipalities to impose like privilege taxes to the extent of one-half of those levied by the State.

Under date of January 16, 1933, the City of Vicksburg passed its first ordinance levying a privilege tax:

"* * * upon each trade, business, calling or profession carried on or located within the corporate limits of the City of Vicksburg, for the year 1933 and subsequent years, as follows, to-wit:

"* * * Ferries.—Upon each person operating a toll bridge between this State and another State, $250.00".

The City ordinance provided further as follows:

"Damages and Penalty for Failure to Procure License. All persons liable for privilege taxes who shall fail to procure the license therefor before beginning the business for which a privilege tax is required by this act, or who shall fail to renew, during the month in which it is due, the license on a business for which he has theretofore procured a privilege license, shall, in each or either of such instance, be liable for 25% of the amount of the tax required for said business. * * *

"Prior Rights or Actions not affected by this Act.—Nothing in this act shall affect or defeat any claim, assessment, suit, appeal, right, or cause of action for taxes due prior to the date on which this ordinance becomes effective, whether such assessment, suit, appeal, or claim therefor shall have been begun before the date on which this act becomes effective, or shall thereafter be begun; and the laws amended or repealed are expressly continued in force, effect and operation for the purpose of the assessment and collection of any taxes due under any such laws prior to the date on which this act becomes effective, and for the imposition of any penalty, forfeiture, or claim for a failure to comply therewith....

"This ordinance to take effect and be in force on and after January 1, 1933."

Similar ordinances were passed by the City Council for the years 1934, 1935 and 1936.

I quote from U.S.C.A., as follows, Title 28, Section 124:

"Management of property by receivers. Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall willfully violate any provision of this section shall be fined not more than $3,000, or imprisoned not more than one year, or both."

I also quote from Sec. 124a of the same Title:

"State taxation; business conducted by receivers, trustees or other court officers subject to

"Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation: Provided, however, That nothing in this section contained shall be construed to prohibit or prejudice the collection of any such taxes which accrued prior to June 18, 1934, in the event that the United States court having final jurisdiction of the subject matter under existing law should adjudge and decide that the imposition of such taxes was a valid exercise of the taxing power by the State or States, or by the civil subdivisions of the State or States imposing the same."

The legal defenses made against the payment of the taxes are as follows:

(1). They are imposed upon the whole of the operation of the business necessarily carried on in both the States of Mississippi and Louisiana, and the statute and ordinance cannot be given extra-territorial effect.

(2). The interstate bridge operated by the defendants is a federal instrumentality and cannot be subjected to State taxation;

(3). The debtor corporation, its receivers and trustees were exempt from the taxes claimed under the State laws.

(4). In no event are the defendants liable for damages.

■ Operation of the bridge and collection of tolls for the passage of persons and property thereover, is not interstate commerce. Henderson Bridge Company v. Kentucky, 166 U.S. 150, 17 S.Ct. 532, 41 L.Ed. 953; Detroit International Bridge Company v. Michigan, 287 U.S. 295, 53 S. Ct. 137, 77 L.Ed. 314; Detroit International Bridge Co. v. Corporation Tax Appeal Board of Michigan, 294 U.S. 83, 55 S.Ct. 332, 79 L.Ed. 777. It is a business which is subject to State and municipal taxation legally imposed. A tax imposed for the privilege of collecting tolls upon an interstate bridge, is not one upon the physical or tangible property of the taxpayer. If tolls be not collected, then no taxes are due; in other words, it is not upon the right or privilege of ownership. In the present instance, it is in no sense gauged according to the value of the property, either within or without the State, nor upon the earnings of the bridge, but is simply a flat annual fee for exercising the privilege of collecting tolls in Mississippi alone from persons and property passing over it, in both directions. See Wiggins Ferry Company v. East St. Louis, 107 U.S. 365, 2 S.Ct. 257, 27 L.Ed. 419. In this case the court said (page 263):

"The next question presented by the assignments of error relates to the power of the state to impose *a license fee either directly or through one of its municipal corporations upon the keepers of ferries living in the state,* for boats owned by them and used in ferrying passengers and goods from a landing in the state, across a navigable river, to a landing in another state. It is insisted by the plaintiff in error that such an exaction is forbidden by the constitution of the United States, (1) because it is a regulation of commerce between the states and therefore, within the exclusive power of congress; and (2) because it is a duty of tonnage, which the states are forbidden by the constitution to lay without the consent of congress.

"In our opinion, neither of these contentions is well founded. The levying of a tax upon vessels or other water-craft, *or the exaction of a license fee by the state within which the property subject to the exaction has its situs, is not a regulation of commerce within the meaning of the constitution of the United States.* Gibbons v. Ogden, 9 Wheat. 1 [6 L.Ed. 23]; Passen-

ger Cases, 7 How. 283 [12 L.Ed. 702]; Morgan v. Parham, 16 Wall. 471 [83 U.S. 471, 21 L.Ed. 303]. In Gibbons v. Ogden it was settled that the clause of the constitution conferring on congress the power to tax, and the clause regulating and restraining taxation, are separate and distinct from the clause granting the power to congress to regulate commerce. In all of the cases just cited the right of a state to tax a ship owned by one of her citizens and having its situs within the state, although used in foreign commerce or in commerce between the states, was distinctly recognized. Thus, in The Passenger Cases, it was said by Mr. Justice McLean: 'A state cannot regulate foreign commerce, but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce-the same as other property owned by its citizens. A state may tax the stages in which the mail is transported, but this does not regulate the conveyance of the mail any more than taxing a ship regulates commerce; and yet, in both instances, the tax on the property in some degree affects its use.'

"In the case of Wheeling P. & C. Trans. Co. v. Wheeling, 99 U.S. 273, [25 L.Ed. 412]. This court sustained a tax levied by the city of Wheeling upon steam-boats used in navigating the Ohio river between that city and Parkersburgh, and the intermediate places on both sides of the river in the states of West Virginia and Ohio, the company whose property the boats were having its principal office in Wheeling.

"*The exaction of a license fee is an ordinary exercise of the police power by municipal corporations.* When, therefore, a state expressly grants to an incorporated city, as in this case, the power 'to license, tax, and regulate ferries,' the latter may impose a license tax on the keepers of ferries, although their boats ply between landings lying in two different states, and the act by which this exaction is authorized will not be held to be a regulation of commerce." (Italics by the writer.)

■ If the situation were reversed, and the State of Louisiana were attempting to collect such a privilege tax when the business was carried on, as it now is in the State of Mississippi, then we would have substantially the situation in legal effect as arose in Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 5 S.Ct. 826, 29 L. Ed. 158, and City of Sault Ste. Marie v.

International Transit Company, 234 U.S. 333, 34 S.Ct. 826, 58 L.Ed. 1337, 52 L.R.A., N.S., 574. In all those cases, where the Supreme Court of the United States has held invalid either property, excise, franchise or privilege taxes, it has been where the attempt was made to impose such taxes upon persons or property having their domicile or situs in another State or Country, such as Helson and Randolph v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683; Gloucester Ferry Co. v. Pennsylvania, supra. Where the taxpayer has his domicile within the State it does not matter that the privilege tax may incidentally or indirectly affect the rate or toll which may be charged against those using such facility as a bridge, although the person using the facility is himself engaged in interstate commerce. See Henderson Bridge Company v. Kentucky, 166 U.S. 150, 17 S.Ct. 532, 41 L.Ed. 953, and authorities cited therein; Arkansas & Memphis Railway Bridge & Terminal Co. v. State of Arkansas, 174 Ark. 420, 295 S.W. 378; cert. denied, 275 U.S. 548, 48 S.Ct. 85, 72 L.Ed. 419.

My view is that the Legislature of Mississippi had the power to impose a privilege tax upon the Bridge Company, and that it could also confer that right upon the City of Vicksburg, but there was no justification in attempting to double it in the year 1934, by either the State or City, because the bridge was operated first, by the corporation, secondly by receivers, and in the third instance, by the trustees. The receivers and trustees were merely the officers of the court, for the time being authorized to take charge of and operate the property of the corporation, and the Act of Congress, (Title 28 U.S.C.A. §§ 124 and 124a) subjected its business to the same taxation as when privately conducted.

The City of Vicksburg is not entitled to claim the privilege tax beyond the year 1933, for the reason that it did not make a levy until that year. It is fundamental that taxes are never to be collected until the steps necessary to impose them have been taken. The first ordinance passed by the City levying the tax "was for the year 1933, and subsequent years"; this does not make it retroactive. When the damages were reduced to 50% in 1934, the effect was to reduce those in favor of the City in the same proportion.

Counsel for the trustees have asked in their brief that if the court should find the State and City were otherwise entitled to recover the taxes, that an opportunity be given to brief the question of exemption. A period of fifteen days will be allowed from the filing of this memorandum in which to brief this question.

It has been utterly impossible for the court to discuss or analyze the many authorities and contentions submitted by counsel, because of the lack of time and the pressing nature of the court's other duties. Nothing more has been done than to announce its conclusions with citation of such cases as appear to be appropriate.