STATE TAX COMMISSION *v.* MISSISSIPPI POWER & LIGHT CO.

(Division B. Feb. 15, 1943. Suggestion of Error Overruled March 1, 1943.)

[11 So. (2d) 828. No. 35249.]

**Greek L. Rice,** Attorney-General, by **W. D. Conn,** **Jr.,** for appellant.

262

Green & Green and E. R. Holmes, Jr., all of Jackson, for appellee.

Argued orally by W. D. Conn, Jr., for appellant, and by Garner Green, for appellee.

Alexander, J., delivered the opinion of the court.

The State Tax Commission required of appellee additional franchise tax assessments for the years 1938, 1939 and 1940. Appellee appealed to the circuit court and from a judgment in its favor the case is brought here. The assessment is made under Chapter 121, Laws of 1934. Section 3 of the Act thereto applicable imposed a franchise tax of $1 of each $1,000 or fraction thereof "of the value of capital used, invested or employed within this state, except as hereinafter provided. It being the purpose of this section to require the payment of a tax by all organizations not organized under the laws of this state, measured by the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state." (The amendment by Chap. 115, Laws 1940, affects only the tax rate.) Other relevant provisions of the Act are: "Sec. 6. The tax imposed, levied and assessed, under the provisions of this act, shall be calculated on the basis of the value of the capital employed in this state for the year preceding the date of filing the return, whether a calendar year, or fiscal year, except where otherwise provided in this act, measured by the combined issued and outstanding capital stock, surplus and undivided profits; . . . " And: "Sec. 7. In all cases for the purpose of determining the amount of capital, the book value as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct as to the true capital of the organization."

The facts, the construction of which has led to divergent contentions, are as follows: Some years ago the power company floated bond issues of some sixteen million dollars in the State of New York. The expense of such sales included discount and other incidental charges which, at the time of the filing of the return for the franchise tax for the year 1938, amounted to $487,822.90. This item is included in the several returns as "Unamor-

tized Debt Discount and Expense'' and is so shown on its books. This item varied for the two succeeding years for reasons not affecting the principles involved. The conflicting views of the parties evolve from an insistence by the Tax Commission that this item constitutes ''capital used, invested or employed within this state'' and the contention by the taxpayer that the item represents no actual value and constitutes a mere bookkeeping entry. The opposing theories are further indicated by its designation by the parties respectively as a ''deferred debit'' and as a ''prepaid expense.''

Against the rather obvious position that the item represents no definite value of itself as a true asset, the Tax Commission argues that it is carried on appellee's books as such and that, viewed as a prepaid expense incurred for the privilege of using the proceeds of the issue during the term of the bonds, it has purchased something of value and is properly a part of its capital assets. Appellant further emphasizes its quality as a true asset by adverting to its availability as a source of deduction throughout the years of its amortization against earnings subject to income tax. We are unable to see the relevancy of these contentions upon what we deem the real issue, namely, whether it is ''capital'' within the definition of Section 3, quoted above.

The Tax Commission urges that Section 7 makes the book value of the company prima facie correct in determining the amount of its true capital. Evidently by way of countering the argument that the presumptive force of this provision must yield to rather overwhelming testimony that the item has no true value, the commission calls attention to the testimony of the company's treasurer that its books are not only prima facie correct but are ''absolutely correct.'' Such a statement is saved from inconsistency by the testimony of the witness and other expert accountants that it comports with correct bookkeeping procedure to carry as a conventional asset an item which is not a true asset. The apparent incon-

sistency is shown not to operate to the disadvantage of the state in the matter of computing franchise tax by the fact that in order for the company's books to remain in balance the amount of surplus so carried and made a factor in the base for computing the tax includes this item. In other words, if the item were charged off, the amount of the surplus would be correspondingly reduced.

We are unable to assent to the proposition that the value of the item is not a relative subject of inquiry. It is true that this is not an ad valorem tax, but the excise tax is properly to be computed upon "the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state." Nor does it fall within the formula insisted upon as required by Section 6, which requires that it "be calculated on the basis of the value of the capital employed . . . measured by the combined issued and outstanding capital stock, surplus and undivided profits . . ." There would seem to be no question but that if the company had elected not to carry the item on the asset side of the ledger there would be no disagreement as to the amount of the tax, since the amount of the other element of capital, its surplus, would be reduced by such exact amount. There is no estoppel available against the company because of its bookkeeping tactics nor are we concerned with any effect of its procedure in matters not here involved.

In this connection, we find In re Detroit International Bridge Company, 257 Mich. 52, 240 N. W. 68 (affirmed on other grounds Detroit International Bridge Co. v. Corporation Tax Appeal Board of Michigan, 287 U. S. 295, 53 S. Ct. 137, 77 L. Ed. 314) in point.

Affirmed.